UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 5:24-cr-97-TPB- TRL-1 |
| DANIEL BALL, ) | |
| Defendant. ) | |

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR ARRAIGNMENT *IN ABTENTIA* AND TO COMPEL DISCOVERY**

Daniel Ball, by and through undersigned counsel, respectfully submits this reply to the government's response in opposition to our Motion for Arraignment *in Abstentia* and to Compel Discovery (ECF No. 10).

**DISCUSSION**[1]

In short, the government's position lacks merit. To start, the government incorrectly claims that we did not articulate why or how a resolution of the D.C. case prior to the Middle District case would prejudice Mr. Ball. Indeed, we referred to the record in the D.C. case, which provides, among other things, that there are likely drastic implications for Mr. Ball's criminal history score in the Middle District case if Mr. Ball is convicted in both cases. *See* ECF No. 8 (citing *United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.), ECF No. 52, and then citing *United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.), Status Hearing (Oct. 29, 2024)). For instance, as discussed at least in part on the record in the D.C. case and as referenced at least in part in this case, if convicted in the D.C. case, the Middle District USAO could try to claim Mr. Ball's D.C. conviction triggers the 15-year mandatory minimum and could try to, without any speedy trial or

---

[1] We incorporate by reference the record in *United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.).

1

other procedural pressures, supersede and include the D.C. conviction in the superseding indictment. The government waited over a year to indict in the instant case and, from what we understand, only considered and decided to indict under precarious circumstances that should warrant skepticism and concern by this Court. Indeed, we suspect that the indictment in the instant case is nothing more than an attempt to pressure Mr. Ball to resolve the D.C. case on the government's terms[2] and to punish him for not accepting the plea and for bringing a selective prosecution argument in his D.C. case.

The government's discussion of the recent record in the D.C. case is misleading, incomplete, and arguably uncalled for. To begin, the government omitted a crucial filing (perhaps the most crucial filing) from its response. *See* Exhibit A. Indeed, the government conveniently left out our response to the U.S. District Court for the District of Columbia's ("D.C. District Court") December 18, 2024 Minute Entry, which included reference to a discussion of the D.C. case's procedural posture that defense counsel had with the MDFL AUSA to show how the single sentence within a footnote of a five-page filing had been taken out of context. *See id.*

Additionally, government seeks to impart undue significance to the recent record in the D.C. case as it relates to the instant case. The D.C. District Court simply stated that it read the language of the single sentence in the filing at issue (ECF No. 8) to be improperly suggestive. *See* Minute Order (Dec. 18, 2024). To be clear, when submitting the filing at issue, we did not believe

---

[2] To resolve the case on the government's terms would be an injustice here because of concerns about, *inter alia*, selective prosecution and the government requiring Mr. Ball to plead to charges that are inapplicable and/or inappropriate. For instance, as explained by the defense's lead expert, the government charged Mr. Ball under a statute that requires the government to show that Mr. Ball used an explosive listed on the Attorney General's annual list of explosives, which it cannot do. *See United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.), ECF No. 68-4 at 16 As another example, the government is requiring that Mr. Ball agree to the permanent injury sentencing enhancement; however, the only expert analysis of this issue indicates that the purported permanent injury could not have been caused by Mr. Ball's alleged conduct and was likely caused by another individual's actions, as described below. *See id.* at 15; *see also United States v. Daniel Ball*, No. No. 1:23-cr-00160-RC-1 (D.D.C.), ECF No. 68-3 at 5-6, 8-9.

2

the sentence at issue was worded to suggest any cause for the vacatur nor did we intend to suggest any reason for the vacatur. However, when the D.C. District Court indicated that it believed the wording implied that the D.C. District Court made a finding as to government misconduct and that such finding was the reason for the vacatur, we stopped working on a lengthy time-consuming filing in another case with an impending deadline to immediately submit a Supplement (ECF No. 9) to ensure this Court would understand our intended position without any misunderstanding. We acknowledge that, in hindsight, the wording of the sentence at issue could have been improved to provide the utmost clarity. But we did not intend to mislead this Court and, given that defense counsel (who is a solo practitioner) has been ill with a severe illness for approximately three months (to the point where she was referred to the emergency room about a week before submitting the filing at issue) and has had to simultaneously juggle other extremely taxing circumstances that have been out of her control, all defense counsel can do is her best.[3] Sometimes one's best comes with unintended mistakes; what matters is that accountability is accepted and appropriate steps are taken to remedy the situation—this is exactly what defense counsel has done here.

The government's quick reference to the delays in the D.C. case being the fault of the defense also omits important context. Each of the delays in the D.C. case were found to be in the interest of justice. The delays were a result of **and/or** came about after consideration of defense counsel's circumstances described above—including the defense's need to revisit the discovery productions to determine what was missing or should have been produced after the defense discovered that at least some discoverable materials/information had not been disclosed by the government—as well as arguments in support of delay that are unique to the D.C. case, like the prejudice of resolving the D.C. case before the instant case and the fact that President-Elect Trump

---

[3] Defense counsel does not intend to suggest (nor does she believe) that she has failed to provide effective assistance of counsel at any juncture.

has indicated he will be pardoning all January 6 defendants.[4, 5] The government's claim that the defense's requests for delay in the D.C. case should undercut a prompt proceeding and disposition of the instant case ignores that the D.C. case has many unique issues at play and that the delays were requested when appropriate under the specific circumstances of the D.C. case. To put it differently, the fact that there has been a need for continuances and extensions in the D.C. case does not meaningfully inform the discourse about how to proceed in the instant case—at least in the manner the government suggests.

Relatedly, there are other differences between the two cases that support a prompt proceeding and disposition of the instant case. The D.C. case is a highly technical case with many charges and a number of experts in the mix; trial is anticipated to go for at least a month, and many complex issues need to be briefed. In contrast, the instant case is straight forward, and a trial will take what defense counsel would estimate would be no more than three days. While the instant case will involve a motion to dismiss in light of the ever-evolving case law on the Second Amendment analysis under *Bruen*, counsel has been preparing to brief this issue for a number of months. (Of course, no such motion will be necessary if a pre-trial disposition can be reached, as described in more detail below.)

---

[4] If the D.C. case—a January 6 case—were to proceed to trial and Mr. Ball were to be convicted, Mr. Ball would be unduly and irreparably prejudiced if pardons are ultimately granted, since pardons are not traditionally understood to do away with a conviction. *See* "Frequently Asked Questions," DEP'T OF JUSTICE OFFICE OF THE PARDON ATTORNEY, https://www.justice.gov/pardon/frequently-asked-questions ("Please also be aware that if you were to be granted a presidential pardon, the pardoned offense would not be removed from your criminal record. Instead, both the federal conviction as well as the pardon would both appear on your record. However, a pardon will facilitate removal of legal disabilities imposed because of the conviction, and should lessen to some extent the stigma arising from the conviction. In addition, a pardon may be helpful in obtaining licenses, bonding, or employment. If you are seeking expungement of a federal offense, please contact the court of conviction.").

[5] We do not mean to suggest that the D.C. District Court relied on any particular reason in deciding to continue a date or extend a deadline at any juncture. We are simply providing context as to the nature of or underlying reasons for the requests.

Additionally, the government's position that logistical challenges should be considered in support of delaying the instant case has little if any merit. Indeed, the logistical challenges we referred to in Mr. Ball's Motion (ECF No. 8) pertained to the fact that Mr. Ball is due for an in-person status conference on January 10, 2025 in D.C. and it would be very difficult to ensure he could be transported to Florida for an arraignment in the days surrounding the status hearing or in an otherwise timely manner. In other words, the referenced logistical challenges pertained to a quick turnaround, not to seeing this case through from start to finish. There is no reason to delay arraignment here. And, in fact, delay would deprive Mr. Ball of the protection afforded by the statutory right to a speedy trial.

There is also no need for the government to delay providing discovery. As an initial matter, the government's representations about discovery disclosures in the D.C. case are misleading. The D.C. USAO only disclosed four productions last year[6] and the subsequent productions were both limited and a result of our discovery requests a handful of months ago. As already explained in part to the D.C. District Court, the government has continued to fail to disclose exculpatory materials/information. Examples of such materials/information are/is as follows: (1) the fact that the officer who is claiming permanent injury from Mr. Ball's alleged conduct (refer above to the discussion of the plea offer) was **violently hit in the head at least once without his helmet with a hard object** approximately two minutes after Mr. Ball's alleged conduct,[7] and (2) **the video**

---

[6] Notably, the D.C. USAO has mistakenly maintained that the four disclosures are the only materials/information it was required to disclose, despite the government failing to disclose information (such as the following) to defense counsel, even as of the date of the instant filing.

[7] Defense counsel came to learn of this on her own. Upon learning of such information, we asked a medical expert who is also an expert in explosives, fireworks, and pyrotechnics to opine as to causation of the purported injury. The expert concluded that the purported injury is not impossible. *See, e.g.*, *United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.), ECF No. 68-4 at 14. Similarly, a nonmedical expert in explosives, fireworks, and pyrotechnics concluded that the device at issue was no more harmful or powerful than a legal firecracker and was not capable of causing "significant injury, if any." *United States v. Daniel Ball*, No. 1:23-cr-00160-RC-1 (D.D.C.), ECF No. 68-3 at 8; *see also id.* at 5-6, 9.

5

**where that very same officer says that he was not injured** in the minutes following Mr. Ball's alleged conduct. To put it simply, it would be misguided to rely on the D.C. USAO's discovery productions.[8]

As to the government's claim that the Middle District need not provide the rest of the discovery at this juncture since we have "substantially all" of the discovery from the D.C. USAO, the government never informed us about the contents of the discovery in the Middle District case as compared to the discovery in the D.C. case and, in fact, the Middle District had previously suggested that it did not have the exculpatory material in the possession of the D.C. USAO showing that Mr. Ball did not knowingly possess or receive a firearm.[9] *See* Email from AUSA William Hamilton to Amy C. Collins on Sept. 5, 2024; Email from AUSA William Hamilton to Amy C. Collins on Nov. 8, 2024 at 8:48 a.m.*;* Email from AUSA William Hamilton to Amy C. Collins on Nov. 8, 2024 at 9:09 a.m. To be clear, the government has been unwilling to make any representations to defense counsel about the content of the discovery, even when we asked for an overview or index to get an idea of what type of materials were in its possession so we could possibly negotiate a disposition. In any event, now that the government has made such a representation in its filing, it does not change our position. We sought the discovery in the instant case to determine if additional information would help the government decide to dismiss the indictment, as we still do not know if the Middle District USAO has the relevant exculpatory information in its possession. In the interest of judicial economy, disclosure is entirely appropriate here.

---

[8] To be clear, we do not intend to suggest that the D.C. District Court has made findings as to whether materials/information were/was discoverable under *Brady* or otherwise.

[9] If it would be helpful to the Court in making a determination, we would gladly submit the email chain between the parties as an exhibit in a redacted or sealed form upon the Court's request, as it contains information that is arguably confidential pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

_____/s/_____
Amy C. Collins
D.C. Bar No. 1708316
888 17th Street, NW, Suite 1200
Washington, D.C. 20006
(228) 424-0609
acollins@kalbianhagerty.com
amy@amyccollinslaw.com
*Counsel for Daniel Ball*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of January 2025, I caused a true and correct copy of the foregoing Motion to be delivered via CM/ECF to all parties.

_____/s/_____
Amy C. Collins